325 So.2d 702 (1976)
Ben BAGERT
v.
James A. MOREAU et al.
No. 7106.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1976.
Rehearings Denied February 10, 1976.
Writs Refused March 19, 1976.
*704 Broderick A. Bagert, New Orleans, for plaintiff-appellee.
Blake G. Arata, Jacob Taranto, III, New Orleans, for members of the City Council for the City of New Orleans, defendants-appellants.
Chaffe, McCall, Phillips, Toler & Sarpy, Harry McCall, Jr., James P. Farwell, New Orleans, for New Orleans Public Service, Inc., intervenor-appellant.
Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, William T. Tete, Kenneth P. Carter, New Orleans, for Louisiana Power & Light Co., intervenor-appellant.
Before SAMUEL, REDMANN and GULOTTA, JJ.
GULOTTA, Judge.
Plaintiff, alleging himself to be a consumer of energy furnished by New Orleans Public Service, Inc. (NOPSI), files a mandamus suit to compel the Council of the City of New Orleans to hold a public hearing with public notice before approving fuel cost adjustments to be paid by the consumer.
NOPSI and Louisiana Power and Light Company (LP&L) intervene. Exceptions of lack of jurisdiction ratione materiae, no cause of action and prematurity, filed by the defendants and intervenors, were referred to the merits. After hearing on the merits, the trial judge made the writ of mandamus peremptory and, in reasons for judgment, concluded that the public utility cannot assess the fuel cost adjustment against the consumer without first conducting a public hearing with public notice as set forth in § 4-1604 of the Home Rule Charter of the City of New Orleans.
Defendants and intervenors appeal. It is their contention, on appeal, that the court lacks jurisdiction ratione materiae over public utility rates since this responsibility is placed exclusively with the Council under Article 4, § 21(C) of the Louisiana Constitution of 1974 and the Home Rule Charter of the City of New Orleans; that plaintiff failed to request a public hearing and notice on the assessment of the fuel cost adjustment prior to instituting judicial proceedings; that mandamus is not the proper remedy; that plaintiff is not a proper party to file suit for the reason that he is not a person or corporation, as contemplated under § 4-1604 of the Home Rule Charter, who must be notified of the time and place of the public hearing.
*705 Finally, it is defendants'-intervenors' position that the fuel cost adjustment is not a "rate" change or alteration requiring notice and a public hearing as set forth under the Home Rule Charter. In this connection, NOPSI and LP&L concede that any rates to be fixed by the public utility require a public hearing by the City Council. However, it is their contention that the fuel cost adjustment is a part of the scheduled rate, not a change in the rate, and, as such, there exists no necessity for a notice of a public hearing. Defendants-intervenors support their contention with Supreme Court decisions from Virginia, Illinois, Mississippi and Massachusetts[1] which, in effect, have held that a fuel cost adjustment is not a rate hike or rate increase requiring public hearing by the regulatory body under the statutes in those states.
Prior to a consideration of § 4-1604 of the Home Rule Charter of the City of New Orleans, relating to establishment of rates, which reads as follows:
"Section 4-1604. Establishment of Rates. In the exercise of its powers of supervision, regulation and control of any street railroad, electric light, gas, heat, power, waterworks or other public utility, the Council shall, in cases involving the establishment, change or alteration of rates, charges, tolls, prices, fares or compensation for service or commodities supplied by such utilities, cause notice of the matter to be served upon the person or corporation affected thereby, so that such person or corporation shall have an opportunity, at a time and place to be specified in said notice, to be heard in respect to said matter. The Council shall make all necessary and reasonable rules and regulations to govern applications for the fixing or changing of rates and charges of public utilities and all petitions and complaints relating to any matter pertaining to the regulation of public utilities, and shall prescribe reasonable rules and regulations to govern the trial, hearing and rehearing of all matters referred to herein, under the same procedure as provided for ordinances granting franchises."
we direct our attention to other issues raised by defendants.

EXHAUSTING ADMINISTRATIVE REMEDY
It is well established that a party must exhaust his administrative remedy before relief can be sought in the courts. However, in the instant case, the Council has taken the position that public notice of a hearing is unnecessary since no price or rate increase is sought by NOPSI. Furthermore, the Council conducted a hearing without public notice in which it approved a fuel adjustment cost. Under the circumstances, requiring plaintiff to petition the Council for relief would be vain and useless. See Louisiana Milk Commission v. Louisiana Commission on Governmental Ethics, 298 So.2d 285 (La.App., 1st Cir. 1974). We find no merit to this contention.

MANDAMUS
We reject also defendants' claim that mandamus is not the proper remedy. We have no quarrel with defendants' argument that before mandamus will lie, plaintiff must show that he has a special interest in the rate or price increase; that he seeks to compel the performance of a ministerial duty[2]; and that no other remedy *706 is available. However, in Bussie v. Long, 286 So.2d 689 (La.App., 1st Cir.1973), writ refused, 288 So.2d 354 (La.1974), the court concluded that a taxpayer had sufficient interest to seek mandamus. In Bussie, on petition of a taxpayer, mandamus was issued to compel the tax commission to assess all property in the state at actual cash value. In the instant case, as in Bussie, plaintiff seeks the enforcement of a public duty. Furthermore, the remedy sought by plaintiff is ministerial in nature. Section 4-1604 of the New Orleans Home Rule Charter provides that the Council shall (emphasis ours) provide notice of a hearing when an alteration or change in a rate, charge, toll, price, fare or compensation for services is requested. If, in fact, the fuel adjustment cost is a price or rate increase or alteration, the request for notice is mandatory and therefore ministerial in nature. Furthermore, the same section of the Charter additionally requires that any order of the Council fixing or establishing any rate, fare or charge of a commodity or service furnished by the public utility requires such order to be issued upon a resolution or ordinance passed in open Council meeting by a majority vote of the Council. Under § 3-112(5), the Charter requires notice by publication, in the official journal of the City, of the introduction of a proposed ordinance, when the substance of the proposed ordinance involves the establishing or increasing of any service charge. Clearly, whether § 4-1604 requires notice to be served when a price or rate alteration or change is requested, or whether notice by publication is required for the adoption of an ordinance or resolution, these requirements are mandatory.
Finally, if we were to accept defendants' argument that mandamus is not the proper remedy because other remedy is available in the instant case, we would restrict the function of the writ of mandamus to such an extent that it would then be a useless and superfluous remedy. See Barrett v. City of New Orleans, 33 La.Ann. 542 (La.App., Orl. 1881). We conclude that mandamus is the proper remedy in the instant case.

NOTICE
Section 4-1604 of the Home Rule Charter provides, in pertinent part:
". . . the Council shall, . . . cause notice of the matter to be served upon the person or corporation affected thereby, so that such person or corporation shall have an opportunity, at a time and place to be specified in said notice, to be heard in respect to said matter. * * *" (underline ours)
Defendants-intervenors contend that the "person or corporation affected thereby", as stated in the above provision, refers to the public utility, i.e., NOPSI and LP&L, affected by the rate increase. On the other hand, it is plaintiff's position that the pertinent phrase refers to all consumers, person or corporation, affected by the price fluctuations.
The district court concluded that plaintiff was a "person" within the contemplation of § 4-1604 and, therefore, had standing to sue under that section. We do not agree. The pertinent provision of the Charter requires that notice of the hearing be "served" on the person or corporation affected. The word "served" means notice by service of process. See Puderer v. City of New Orleans, 323 So.2d 835 (La.App., 4th Cir. 1975). Clearly, the cited part of § 4-1604 does not require all users of electricity and gas to be "served" with a notice of hearing. We can only conclude that the notice requirement under this part must be served on the public utility affected by the rate change request.
However, plaintiff does not seek notice by service of process, but seeks notice by publication. We find support for plaintiff's position, if indeed a rate or price alteration or change is sought.
*707 Under § 4-1604, when any rate or charge is established or fixed for any service or commodity furnished by a public utility, the Council shall do so by resolution or ordinance in open Council meeting passed by a majority vote of the Council. As pointed out hereinabove, the adoption of an ordinance requires notice by publication. Accordingly, we conclude that plaintiff, a consumer who has a pecuniary interest in the ultimate cost of electricity and gas, is entitled to assert a claim requiring notice of a public hearing in accordance with the provisions of the Home Rule Charter, if, in fact, a rate or price alteration or change is sought by NOPSI.

RATE OR PRICE CHANGE
The pertinent section of the Home Rule Charter relating to rate or price changes or alteration is § 4-1604, which reads as follows:
"Establishment of Rates. In the exercise of its powers of supervision, regulation and control of any street railroad, electric light, gas, heat, power, waterworks, or other public utility, the Council shall, in cases involving the establishment, change or alteration of rates, charges, tolls, prices, fares or compensation for service of commodities supplied by such utilities, cause notice of the matter to be served upon the person or corporation affected thereby, so that such person or corporation shall have an opportunity, at a time and place to be specified in said notice, to be heard in respect to said matter. The Council shall make all necessary and reasonable rules and regulations to govern applications for the fixing or changing of rates and charges of public utilities and all petitions and complaints relating to any matter pertaining to the regulation of public utilities, and shall prescribe reasonable rules and regulations to govern the trial, hearing and rehearing of all matters referred to herein, under the same procedure as provided for ordinances granting franchises."
The clear purpose and intent of this Home Rule Charter provision is to protect the consumer against unwarranted gas and electrical rate increases.
If NOPSI and LP&L have any control over the amount of the fuel adjustment cost to be paid by the consumer, presumably, under the Charter provision, a public hearing with notice would afford an opportunity for the introduction of evidence on the reasonableness or unreasonableness of the proposed increase. In this event, these costs would be a rate or price change requiring notice and a public hearing as contemplated in the Charter.
On the other hand, if the fuel adjustment cost is regulated by a governmental or regulatory agency and not controlled by NOPSI and LP&L, these costs are not price or rate changes requiring a public hearing with notice. A hearing, under these circumstances, would be a vain and useless act.
However, we find the evidence incomplete relating to what a fuel adjustment cost is, whether this cost is set by the Federal Power Commission or a supplier of fuel to the public utility company, and whether NOPSI and LP&L exercise any control over the amount of cost passed on to the consumer. This evidence is necessary for a determination of the crucial question, i.e., whether the fuel adjustment cost is a rate or price increase requiring a notice of public hearing.
In the instant case, Val E. Kissgen, a utility engineer in the Department of Utilities for the City of New Orleans, stated (though not clear from his testimony) that NOPSI estimates their fuel costs in advance and collects those costs in advance. According to Kissgen, if NOPSI overestimates, a complete refund is made to NOPSI's consumers, but the individual consumer would not necessarily receive the precise amount that he, individually, had overpaid. Kissgen's testimony might infer that by exercising control over the amount *708 of the estimate, NOPSI has control over the fuel adjustment cost. However, in oral argument, counsel for NOPSI stated that the fuel adjustment cost is determined by a regulatory agency and/or a supplier of energy and intervenors have no control over the amount of the fuel adjustment cost.
Under the circumstances, it is apparent to us that sufficient evidence is lacking in the record for a determination of whether or not the fuel adjustment cost is a rate or price increase as contemplated by the Charter.
Accordingly, the judgment appealed from is annulled and set aside. This matter is now remanded for the limited purpose of hearing evidence on: what a fuel adjustment cost is, what governmental agency or supplier of fuel determines the cost, whether NOPSI and LP&L exercise control over the amount which is passed on to the consumer and for rendition of judgment by the trial court consistent with the views expressed herein; all costs are to await a final determination.
Annulled, set aside and remanded.
REDMANN, Judge (concurring in part).
The judgment should be set aside, but plaintiff's suit should be dismissed rather than remanded. The trial judge is perhaps correct in his view that an automatic rate adjustment for fuel cost (why not for rent equipment costs, or staff salaries?) is a change in rate or price. But he erred in ruling that plaintiff is "the person or corporation affected," City Charter § 4-1604, by the Council's "establishment, change or alteration of rates," entitled to have notice of a hearing "served upon" him. That was the basis of plaintiff's demand. Regrettablyas plaintiff apologized at oral argumentpersonal problems prevented his submitting a brief arguing his case. There may be alternative theories which might support ordering the Council to hold hearings, but they were not developed by any evidence in the trial court because they were not asserted at all.
NOTES
[1] These cases are City of Norfolk v. Virginia Electric and Power Company, 197 Va. 505, 90 S.E.2d 140 (1955); United Gas Corporation v. Mississippi Public Service Commission, 240 Miss. 405, 127 So.2d 404 (Miss.1961); Chicago v. Illinois Commerce Commission, 13 Ill.2d 607, 150 N.E.2d 776 (1958); and Consumers Organization for Fair Energy Equality, Inc. & Others v. Department of Public Utilities & Others, Massachusetts Supreme Judicial Court, No. S-235 Mass., 335 N.E.2d 341 (1975).
[2] See State v. Adjustment Board of City of Baton Rouge, 220 La. 708, 57 So.2d 409 (1952).